UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

vs.                                         19-CR-106

JEFFREY RICHARDS,

                Defendant.

## POST HEARING SUPPLEMENTAL SUBMISSION

In this case, the subject of a search warrant for premises can be detained 4.9 miles from his residence.

## FACTUAL BACKGROUND

In this case, the FBI and the ATF agents observed Jeffrey Richards leave his residence with Todd Biro. The agents did not see either of them in possession of a weapon or any bulge. Todd Biro admitted to Investigator, Tony Olivo, that he had not seen Richards with a weapon and that if one were present in the automobile it would not be able to be seen and he could not see one.

The implication from that admission is that circumstantially, it could be proven through Biro's statement that Jeffrey Richards did not possess a gun at all and that a gun was already present in the car safely tucked under the driver's seat when Todd Biro arrived at the residence to pick up Jeffrey Richards. When they came out, instead of Todd Biro driving, Jeffrey Richards drove with the gun underneath the front driver's seat. The vehicle was rented by Todd Biro's wife. Todd Biro was working with the FBI.

This is clearly a declaration against interest circumstantially because it implicates Biro as the only one with knowledge of the gun, since he was the driver and knew of the presence of a gun. It could not be seen. Therefore, he was in fact the owner and possessor of the gun circumstantially. The Penal Code of New York § 265.03(15) imputes possession to every occupant of an automobile. The agents could have stopped Mr. Richards at the premises itself because they had prior knowledge of his whereabouts through surveillance, but instead they waited for Mr. Richards to leave so they could follow him 4.9 miles in a cavalcade with the Niagara County Sheriffs leading the procession to the Last Chance Saloon 4.9 miles from Mr. Richards' residence. They stopped him in the parking lot ordered him out of the car, declared it to be a probable cause arrest and seized his body and person and searched the vehicle "for safety reasons."

## LEGAL ARGUMENT

The Supreme Court of the United States has stated in no uncertain terms that even though *Michigan v. Summers*, 452 US 692, provided three categories of cases where detention is allowed without probable cause to arrest for crime, it had spatial limitations. *Summers* has suggested there is a tension between the posing interest in crime prevention and detection and the police officer's safety. *Summers* supra at 697-698.

*Summers* defined three areas in which detention is allowed without probable cause to arrest for a crime. It permitted officers executing a search warrant "to detain the occupants of the premises while a proper search is conducted." *Summers* supra at 705.

*Summers* recognized three interests taken together to justify the detention of an occupant who is on the premises during the execution of a search warrant 1.) officers' safety,

2.) facilitating the completion of the search, and 3.) preventing flight. *Summers* supra at 702-703.

Certainly, the government will rely on the ruling *Summers*. However, the Supreme Court of the *United States in Bailey v. United States*, 568 US 186, placed a severe limitation on the exercise of detention of an occupant of the household to be searched. Bailey was found one mile from the residence and the Second Circuit Court of Appeals in permitting that detention relied on safety. It concluded that limiting the application of the authority to detain to the immediate vicinity would put law enforcement in a dilemma. They would have to choose between detaining an individual immediately and asserting risks to the occupants still inside or allowing the individual to leave and risk not being able to arrest him later if incriminating evidence were discovered.

The Supreme Court of the United States in *Bailey* limited the application of *Summers*. Accordingly, *Bailey* has said:

> a spatial constraint defined by the immediate vicinity of the premises to be searched is therefore required for detention incident to the execution of a search warrant. The police action permitted here - - the search of a residence - - has a spatial dimension, and so a spatial or geographical boundary can be used to determine the area which both the search and the detention incident to the search may occur. Limiting the rule in Summers to the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant ensures the scope of the detention incident to a search is confined to its underlying justification.
>
> Once an occupant is beyond the immediate vicinity of the premises to be searched, the search related law enforcement interests are diminished, and the intrusiveness of the detention is more severe. *Bailey* supra at 201.
> Court went on to say:
>
> Here, the petitioner was detained at a point beyond any reasonable understanding of the immediate vicinity of the premises in question so this case presents neither the necessity nor the occasion to further define the

meaning of immediate vicinity. *Bailey* at 201.

Justice Scalia with whom Ginsberg and Kagen concurred with the opinion of the court wrote:

> Whether *Summers* applies at all. It applies only to seizure of "occupants that his persons within the immediate vicinity of the premises to be searched" *Ante* at 185 Lawyers Edition 2nd at 32.

"Bailey was seized a mile away. Ergo, *Summers* cannot sanction Bailey's detention. It is really that simple." Justice Scalia and the majority of the court in *Bailey* suggest that one mile is unreasonable. Justice Scalia, Ginsberg and Kagen concur and suggest the answer.

> To resolve that issue the court merely need to ask only one question. Was the person seized within "the immediate vicinity of the premises searched." *Bailey* at 201.

In the Western District of New York, *United States v. Gildersleeve*, 2013 US Dist. LEXIS 66232 213 WL 1908049, Justice Hugh B. Scott discussed the ramifications of both *Summers* and *Bailey*. The facts at the suppression hearing determined that the defendant was detained 100 to 200 feet outside of his home and placed in handcuffs and brought back to his residence and read Miranda rights. The government relied on *Summers* in *Gildersleeve* assumedly like they relied on *Summers* in our Richards case when the FBI discussed safety for the detention and search of a vehicle. Justice Scott found that the police improperly detained Gildersleeve and brought him to 527 24th Street for the purposes of executing a search warrant for that premises. Relying on *Bailey*, Judge Scott said:

> "Because the court finds that Gildersleeve's detention was improper in light of *Bailey*, the statements made by Gildersleeve during the execution of the search warrant should be suppressed. Where a defendant makes statements after being illegally arrested or detained the supreme Court has held that the

government has the burden to demonstrate through circumstantial evidence the statements were an act of freewill sufficient to purge the primary taint of the unlawful detention." *Kaupp v. Texas*, 538 US 626, 123 S. Ct. 1843. Court ultimately suppressed the statements because of the illegal detention.

Judge Arcara not only adopted Judge Scott's determination but wrote his own separate opinion in *United States v. Gildersleeve*, 213 US Dist. LEXIS 112038 213 WL 4046293 as a result of the government's request for reconsideration. Judge Arcara discussed *Michigan v. Summers* but pointed out that the Supreme Court recent limitation in *Bailey*.

> Recently the Supreme Court held that the *Summers* rule which allows officers executing a search warrant to detain the occupants of a premises while a proper search is being conducted is limited to the immediate vicinity of the premises to be searched and does not apply when a recent occupant of the premises is detained at a point beyond any reasonable understanding of the immediate vicinity of the premises in question. Citing, *Bailey v. United States*, 568 US 186, 133 S. Ct. 1031 185 L. Ed.2d 19 (2013).

Judge Arcara aptly pointed out the Supreme Court reasoned that detaining an individual outside the immediate vicinity of the place to be searched does not serve any of the law enforcement interest enumerated in *Summers*. He then went on to agree that a confession obtained after the detention should be suppressed.

In looking at this case, it is blatantly clear that the caravan followed Richards and Biro 4.9 miles to Dave's Last Chance. This is obviously further than the immediate vicinity of the premises as defined by *Bailey* and clearly outside the 100-200 feet that Judge Arcara and Judge Scott found objectionable and repugnant to *Bailey* in *United States v. Gildersleeve*. In examining these cases and the fact of *United States v. Richards*, one sees a detaining of Jeffrey Richards at 4.9 miles from the residence. Bailey was one mile from the residence and Gildersleeve was 100-200 feet from the residence. All these computations are well beyond the reasonable location as set forth in *Bailey* and *Gildersleeve*.

## CONCLUSION

The detention and stop were illegal and therefore the gun should be suppressed. Moreover, after reading *Gildersleeve*, and noting that there was a statement in this case Richards, respectfully requests leave to file a motion based on *Bailey* and *Gildersleeve* to suppress the statement of Richards as the fruits of the poisonous tree much like Judge Arcara and Judge Scott ruled the confession of Gildersleeve to be the fruits of the illegal detention of Mr. Gildersleeve.

_____
Michael J. Stachowski