IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                              19-CR-106-V

JEFFREY RICHARDS,

                Defendant.

---

### GOVERNMENT'S SUPPLEMENTAL BRIEF IN OPPOSITION
### TO THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

**THE UNITED STATES OF AMERICA**, by and through its attorney, James P. Kennedy, Jr., United States Attorney, and Brendan T. Cullinane, Assistant United States Attorney, of counsel, hereby files its supplemental brief in opposition to the defendant's motion to suppress evidence. See Doc. No. 54.

### I.    PROCEDURAL HISTORY

The government relies on the procedural history contained in the record and described in the government's November 5, 2020, filing in opposition to the defendant's motion to reopen the suppression hearing. See Doc. No. 79.

Subsequently, on November 10, 2020, the parties appeared before this Court for oral argument (see Doc. No. 80) regarding the defendant's motion to reopen the suppression hearing (see Doc. No. 78). At that time, the Court entered the defendant's investigator's affidavit (see Doc. No. 60) as an exhibit to the evidentiary hearing. See Doc. No. 80. In

addition, the Court ordered the parties to submit additional briefing regarding the December 14, 2018, stop of the defendant and the recovery of the firearm from the defendant's possession. Id.

As described herein, the government submits that law enforcement permissibly stopped the defendant and lawfully recovered the firearm in the defendant's possession observed in plain view by law enforcement.

## II.   PRELIMINARY STATEMENT

As demonstrated in the government's post-suppression hearing brief, the credible evidence presented at the evidentiary hearing held on January 27, 2020, including the testimony of Federal Bureau of Investigation Special Agents Thomas V. Weis and Mark R. Schirching, indicates that on December 14, 2018, law enforcement lawfully recovered a firearm in the defendant's possession. The testimony of the agents established that, based on public safety concerns, law enforcement properly stopped the defendant's vehicle, detained the defendant, and lawfully recovered a firearm, which law enforcement observed in plain view, from the defendant's possession.

## III.   FACTS

The government relies on the facts contained in the record and incorporates the facts as described in the government's post-suppression hearing brief, as though set forth fully herein. See Doc. No. 55.

## IV.     ARGUMENT

A.     <u>The Defendant's Motion to Suppress Should Be Denied.</u>

The defendant argues that on December 14, 2018, law enforcement impermissibly stopped the defendant pending the execution of the search warrant at his residence and subsequently unlawfully observed, in plain view, the defendant's firearm.  However, the case law below elucidates that law enforcement acted lawfully, permissibly, and reasonably based upon the information law enforcement learned regarding the defendant's manufacturing and possession of bombs, possession and distribution of narcotics, including fentanyl, and possession of firearms in furtherance of drug trafficking.  As such, the government again submits that the defendant's motion to suppress evidence should be denied.

### 1.     <u>On December 14, 2018, Law Enforcement Lawfully Detained the Defendant In Anticipation of the Pending Search Warrant at His Residence.</u>

In <u>Michigan v. Summers</u>, 452 U.S. 692 (1981), the Supreme Court justified detention of the defendant outside his residence without probable cause or reasonable suspicion.  <u>Id.</u> at 705.  The Court reasoned this seizure was constitutionally permissible based on three important law enforcement interests: (1) minimizing the risk of harm to the officers; (2) facilitating the orderly completion of the search if the occupants of the premises are present; and, (3) preventing flight in the event that incriminating evidence is found.  <u>Id.</u> at 702–03.  Notwithstanding these justifications individually, the Court reasoned that "[t]he existence of a search warrant . . . *also* provides an objective justification for the detention."  <u>Id.</u> at 703 (emphasis).  Finding that it is constitutionally reasonable to detain an individual during a search warrant execution, the Court held "a warrant to search for contraband founded on

probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Id. at 705.  The risk of harm to both the police and others is minimized if the officers routinely exercise unquestioned command of the situation.  Id. at 702–03.

In Muehler v. Mena, 544 U.S. 93 (2005), the Court upheld the detention of the defendant because "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'"  Id. at 99 (quoting Summers, supra, 452 U.S. at 705).  The Court determined that law enforcement lawfully detained the defendant because the marginal intrusion into the defendant's privacy did not outweigh the governmental justifications as set forth in Summers, supra, 452 U.S. at 702–03.  Id. at 97.

In United States v. Bailey, 568 U.S. 186, 192 (2013), the Court noted that the rule announced in Summers, supra, "does not require law enforcement to have particular suspicion that an individual is involved in criminal activity or poses a specific danger to officers."  Id. at 193.  While the Court declined to "further define the meaning of immediate vicinity," the Court provided guidance to courts addressing "closer cases" involving a detention related to a search warrant execution.  Id. at 201.  In determining whether a person was lawfully detained near such the "vicinity" of the premises to be searched, courts may consider, among other facts, "the ease of reentry [to the residence] from the occupant's location, and *other relevant factors*."  Id. at 201 (emphasis added).

Law enforcement's interest in detaining a person is "justified by the interests in executing a safe and efficient search." Id. at 201.  The Court determined that, during the execution of a search warrant, officers have "far-reaching authority" to "accommodate the necessities of the search." Id. at 195.  The Court opined that were the rule otherwise, occupants could, for example, "interfere[ ] with execution of the search warrant," "hide or destroy evidence," "distract the officers," or "simply get in the way." Id. at 197.  As such, detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake.  Id. at 202.

With these legal principles in mind, on December 14, 2018, law enforcement officers properly stopped the defendant while in the parking lot of Dave's Last Chance Saloon in Niagara Falls, New York, incident to the execution of the search warrant at his residence.

Indeed, prior to the stop of the defendant, this Court signed a search warrant for the defendant's residence in Niagara Falls, New York.  See Michigan v. Summers, 452 U.S. at 703 (finding that "[t]he existence of a search warrant . . . *also* provides an objective justification for the detention.") (emphasis added).  The search warrant application documented law enforcement's independently corroborated information regarding the defendant's active participation in the manufacturing of bombs, possessing and distributing of illegal narcotics (including fentanyl), and possessing of firearms.

On that same date, shortly before the execution of the search warrant, law enforcement observed the defendant depart his target residence and enter the vehicle from which law enforcement subsequently detained the defendant and found his firearm. Law enforcement had previously learned that "any time [the defendant] left" his residence, "he typically carried a .45 [caliber handgun]." Doc. No. 83 at 31 (lines 24–25); see also Michigan v. Summers, 452 U.S. at 703-04 (finding "[t]he connection of an occupant to that home [subject to a search warrant execution] gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies the detention of that occupant.").

On December 14, 2018, law enforcement acted reasonably when law enforcement detained the defendant related to the search warrant execution at his target residence. Michigan v. Summers, 452 U.S. at 705. In this case, law enforcement detained the defendant in order to minimize the risk of harm to the officers. Id. at 702–03. As previously addressed, law enforcement learned that the defendant possessed bombs, firearms, and narcotics at his residence. During examination at the suppression hearing, FBI Special Agent Thomas Weis testified that at that time, law enforcement was aware of individuals using a remote control device, such as a cellular phone, to detonate a bomb located elsewhere, including from miles away. See 83 at 8 (lines 10 – 24); see also 83 at 104 (lines 1–13) (MAGISTRATE JUDGE ROEMER: Okay. And did you testify - - did I hear correctly that one of your concerns was the possibility of a remote detonation of this bomb while executing the search warrant? THE WITNESS: Yes, Your honor."). Law enforcement learned that the defendant carried a firearm on him when he left his residence and believed that the defendant kept fentanyl, an extremely potent narcotic at miniscule amounts, at his residence.

While the safety of the officers – and neighbors – was paramount, the detention of the defendant also facilitated an orderly completion of the permissible search of the premises and further prevented flight in the event that law enforcement found incriminating evidence. See Michigan v. Summers, 452 U.S. at 702–03. In addition, although not necessary, the search warrant application and testimony of FBI Special Agent Weis indicated that law enforcement had at least reasonable suspicion to detain the defendant based on his criminal conduct. Id. at 705. Law enforcement did not unlawfully detain the defendant because the marginal intrusion into the defendant's privacy did not outweigh the governmental justifications as set forth in Summers, supra. Muehler v. Mena, 544 U.S. at 97.

Additionally, as previously described, the Supreme Court declined to "define the meaning of immediate vicinity" regarding the detention of a person incident to a search warrant execution and the location of the premises. United States v. Bailey, 568 U.S. at 201. Instead, the Court provided guidance to courts, such as this Court, to address cases involving a detention related to a search warrant execution by examining, among other facts, "the ease of reentry [to the residence] from the occupant's location, and *other relevant factors*." Id. at 201 (emphasis added).

In this case, FBI Special Agent Weis's testimony explains that law enforcement had a good faith basis to believe that the defendant had the potential to access his bombs even if he was not within his home, but if he was, for example, miles away. The Supreme Court's declination to provide a limited definition of "immediate vicinity" is of utmost significance, as well, as it demonstrates that an individual, such as the defendant, may still have access to

objects within the premises – even from afar and not within the traditional construct of the "immediate vicinity." United States v. Bailey, 568 U.S. at 201. In this instance, with the availability of cell phone technology, law enforcement had concerns that the defendant did, in fact, have an "ease of reentry [to the residence]" to detonate a bomb "from [his] location," that is, the parking lot at Dave's Last Chance Saloon from where law enforcement arrested him. Thus the potential of the defendant to detonate a bomb from afar shows that the distance from his residence is of no consequence; law enforcement was aware that whether someone was either in a premises or, as in this case, nearly five miles away, a person can manufacture a bomb to detonate remotely.

If the defendant detonated the bomb, he would not only destroy evidence, but, most importantly, also cause harm to officers and others. See Michigan v. Summers, 452 at 702 ("Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers). Furthermore, law enforcement was aware that the defendant possessed firearms and was a member of the Kingsmen Motorcyle Club, a violent outlaw motorcycle gang with chapters across multiple states. As such, this Court can also rely on the "other relevant factors" that law enforcement possessed at the time that law enforcement permissibly detained the defendant incident to a search warrant execution.

In this case, law enforcement's actions in detaining the defendant on December 14, 2018, were "justified by the interests in executing a safe and efficient search." United States v. Bailey, 568 U.S. at 201. The government argues that law enforcement did not exercise "far-reaching authority" but are permitted to do so in an attempt to "accommodate the

necessities of the search" and provide safety for all. Id. at 195. Most importantly, law enforcement acted reasonable to ensure that the defendant could not "interfere[ ] with [the] execution of the search warrant," "hide or destroy evidence," "distract the officers," or "simply get in the way." Id. at 197. As such, law enforcement's brief detention of the defendant incident to the execution of the signed search warrant at his residence was reasonable under the Fourth Amendment because any brief intrusion on the defendant's personal liberty is outweighed by the special law enforcement interests at stake. Id. at 202. In particular, the public safety interest of both law enforcement and the public in light of the defendant's active and substantial involvement in the manufacturing and possession of bombs, possession and distribution of narcotics (including fentanyl), and possession of firearms in furtherance of drug trafficking demonstrates that law enforcement acted reasonably and appropriate on December 14, 2018.

Finally, the government notes that the defendant erroneously relies on United States v. Gildersleeve, 2013 U.S. Dist. LEXIS 66232 (W.D.N.Y., April 19, 2013). At the time of the search warrant in that matter, law enforcement did not have any information that Gildersleeve possessed or had access to a bomb that he could remotely detonate. Id. Thus, while the Court noted that law enforcement intended to detain the defendant "irrespective" of his location at the time of the search warrant, the facts in that case are not applicable to the case at-hand before this Court. Id. at *20. In Gildersleeve, the Court found that the government made "no attempt to articulate a factual link between the detention of Gildersleeve . . . and any one of the three interests articulated in Summers." Id. at 21. In contrast to Gildersleeve, in this case, the government is relying upon the interests articulated

9

in <u>Summers</u> to demonstrate that the detention of the instant defendant incident to the execution of the search warrant was necessary for officers' and others' safety.

    **2.**     **Alternatively, on December 14, 2018, Law Enforcement Had Reasonable Suspicion to Seize the Defendant and Observe, in Plain View, the Defendant's Loaded Firearm.**

Even if this Court were to conclude that the defendant was not within the "immediate vicinity" of the search warrant location, law enforcement had reasonable suspicion on December 14, 2018, to seize his person. Under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), an officer may briefly detain a suspect for investigative purposes and may also conduct a frisk or a patdown of the person if the officer has reasonable grounds to believe the suspect to be armed and dangerous. A brief investigatory stop by police is permissible only if "the officer's action is supported by a reasonable and articulable suspicion, under all the circumstances, that criminal activity 'may be afoot.'" <u>Id</u>. at 19. To satisfy a <u>Terry</u> stop, officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [on a citizen's liberty interest]." <u>United States v. Elmore</u>, 482 F.3d 172, 178–79 (2d Cir. 2007).

There must be "particularized suspicion" that the person has committed or is about to commit a crime; mere "presence in an area of expected criminal activity . . . is not enough[.]'" <u>Id</u>. at 171–72 (quoting <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124 (2000)). But "the quantum of proof necessary to demonstrate reasonable suspicion is considerably less than a preponderance of the evidence." <u>United States v. Branch</u>, 537 F.3d 328, 336 (4th Cir. 2008). Furthermore, when an investigative detention is permitted under <u>Terry</u>, "[t]he scope of the

10

detention must be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983).  Therefore, the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop."  Id.  "Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."  Id.

Here, law enforcement undoubtedly had reasonable suspicion to detain the defendant. On December 14, 2018, at approximately 3:02 p.m., this Court signed a search warrant to search the defendant's residence for, among other items, narcotics, firearms, drug packaging materials, and bomb-making materials.  The search warrant application included information law enforcement learn about the defendant; in particular, that the defendant possessed drugs, firearms, and bombs and manufactured bombs.  In addition, the application stated that law enforcement had recently conducted a controlled purchase of suspected heroin from the defendant's residence.

During the hours following this Court's signing of the search warrant, law enforcement observed the defendant leave his residence and enter the vehicle from which law enforcement subsequently detained the defendant.  At that time, law enforcement also knew, from a corroborated source, that "any time [the defendant] left" his residence, "he typically carried a .45 [caliber handgun]."  Doc. No. 83 at 31 (lines 24–25).

Based on the nature of the investigation, which included the manufacturing and possession of bombs, possession and distribution of narcotics, including fentanyl, and

possession of firearms in furtherance of drug trafficking, law enforcement had ample reasonable suspicion to detain the defendant. As such, officers reasonably (and correctly) concluded that criminal activity was afoot. Further, at that time, law enforcement observed, in plain view while standing outside of the defendant's vehicle, a firearm under the defendant's seat in the vehicle he drove.

## CONCLUSION

For all of the foregoing reasons, the defendant's motion should be denied.

DATED: Buffalo, New York, November 24, 2020.

>
> JAMES P. KENNEDY, JR.
> United States Attorney
>
> BY:   s/BRENDAN T. CULLINANE
> Assistant United States Attorney
> United States Attorney's Office
> Western District of New York
> 138 Delaware Avenue
> Buffalo, New York  14202
> 716/843-5875
> Brendan.Cullinane@usdoj.gov