IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                                                                          19-CR-106-JLS

JEFFREY RICHARDS,

                Defendant.

---

### GOVERNMENT'S SUPPLEMENTAL RESPONSE BRIEF IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

**THE UNITED STATES OF AMERICA**, by and through its attorney, James P. Kennedy, Jr., United States Attorney, and Brendan T. Cullinane, Assistant United States Attorney, of counsel, hereby files its supplemental response brief in opposition to the defendant's motion to suppress evidence.  See Doc. Nos. 54, 81.

### I.   PROCEDURAL HISTORY

The government relies on the procedural history contained in the record and described in the government's November 5, 2020 (see Doc. No. 79), and November 24, 2020 (see Doc. No. 84), filings in opposition to the defendant's motions.

### II.   PRELIMINARY STATEMENT

As demonstrated in the government's post-suppression hearing briefs, the credible evidence presented at the evidentiary hearing held on January 27, 2020, including the testimony of Federal Bureau of Investigation Special Agents Thomas V. Weis and Mark R.

Schirching, indicates that on December 14, 2018, law enforcement lawfully recovered a firearm in the defendant's possession. The testimony of the agents established that, based on public safety concerns, law enforcement properly stopped the defendant's vehicle, detained the defendant, and lawfully recovered a firearm, which law enforcement observed in plain view, from the defendant's possession.

### III.   FACTS

The government again relies on the facts contained in the record and incorporates the facts as described in the government's post-suppression hearing brief, as though set forth fully herein. See Doc. No. 55.

In addition, the government contests the "factual background" set forth in the defendant's November 17, 2020, filing. See Doc. No. 81 at 1. In particular, the defendant, without more, asserts that another individual possessed the firearm and falsely alleges that on December 14, 2018, the defendant did not possess the firearm. See Doc. No. 81 at 1. However, as recorded by law enforcement's cameras at the time law enforcement stopped the defendant and detained him pending the execution of the search warrant at his residence, law enforcement found the defendant in possession of a firearm underneath his driver's seat.

Subsequently, law enforcement submitted the firearm for DNA analysis; the Erie County Central Police Services Forensics Laboratory determined that "[t]he major DNA profile [found on the firearm] is that of a male individual and matches the DNA profile from the known buccal sample from Jeffrey Richards. The evidence DNA profile is at least 1.42 X

$10^{17}$ (142 Quadrillion) times more probable if the sample originated from Jeffrey Richards and three unknown individuals than if it originated from four unknown individuals in the U.S. population."

Finally, the defendant, in a post-<u>Miranda</u> interview, admitted to possessing the firearm found in the vehicle.  The defendant admitted the firearm was his and did not claim that the firearm belonged to anyone else.

While outside the record of the suppression hearing's transcript, the government provides this information to clarify the case's factual basis that the defendant, through counsel, has attempted to distort.

### IV.     ARGUMENT

**A.     <u>The Defendant's Motion to Suppress Should Be Denied.</u>**

On December 14, 2018, law enforcement permissibly stopped the defendant pending the execution of the search warrant at his residence and subsequently observed, in plain view, the defendant's firearm.  The record and case law demonstrate that law enforcement acted lawfully, permissibly, and reasonably based upon the information law enforcement learned regarding the defendant's manufacturing and possession of bombs, possession and distribution of narcotics, including fentanyl, and possession of firearms in furtherance of drug trafficking.  As such, the government again submits that the defendant's motion to suppress evidence should be denied.

1. **Contrary to the Defendant's Argument, on December 14, 2018, Law Enforcement Lawfully Detained the Defendant in Anticipation of the Pending Search Warrant at His Residence.**

The government's previous filing described the pertinent case law in Michigan v. Summers, 452 U.S. 692 (1981). In particular, the detention of a person outside of the residence to be searched is permissible based on three important law enforcement interests: (1) minimizing the risk of harm to the officers; (2) facilitating the orderly completion of the search if the occupants of the premises are present; and, (3) preventing flight in the event that incriminating evidence is found. Id. at 702–03.

Additionally, in Muehler v. Mena, 544 U.S. 93 (2005), the Court upheld the detention of the defendant because "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" Id. at 99 (quoting Summers, supra, 452 U.S. at 705).

In United States v. Bailey, 568 U.S. 186, 192 (2013), the Court declined to "define the meaning of immediate vicinity," but instead provided guidance to courts addressing "closer cases" involving a detention related to a search warrant execution. Id. at 201. In determining whether a person was lawfully detained near such the "vicinity" of the premises to be searched, courts may consider, among other facts, "the ease of reentry [to the residence] from the occupant's location, and *other relevant factors*." Id. at 201 (emphasis added). The Court determined that, during the execution of a search warrant, officers have "far-reaching authority" to "accommodate the necessities of the search." Id. at 195.

The defendant's filing similarly relies upon United States v. Bailey, supra. See Doc. No. 81. Indeed, the defendant states that "[l]imiting the rule in Summers to the area in which an occupant *poses a real threat to the safe and efficient execution of a search warrant* ensures the scope of the detention incident to a search is confined to its *underlying* justification." Id. at 3 (quoting United States v. Bailey, 568 U.S. at 201) (emphases added).

However, the defendant fails to remark that the application for the search warrant to be executed at the defendant's residence included "underlying" information regarding the defendant's possession of bombs, bomb-making materials, firearms, and fentanyl. See Doc. No. 81. FBI Special Agent Weis testified that law enforcement was aware that individuals, such as the defendant, who manufactured bombs could remotely detonate bombs via cellular phone from miles away. Thus, at the time that law enforcement stopped the vehicle in which the defendant was traveling in possession of a firearm, the defendant still posed a "real threat" to law enforcement, any occupants of his own home, occupants of his neighbor's homes, and anyone near the vicinity of his home who could be hurt if the defendant detonated a bomb.

Moreover, law enforcement had a good faith basis to believe that the defendant, because of his potential to remotely cause damage within the residence to be searched, was a "real threat to the safe and efficient execution of a search warrant" and therefore was properly stopped and detained. United States v. Bailey, 568 U.S. at 201; see also Michigan v. Summers, 452 U.S. at 703 (finding that "[t]he existence of a search warrant . . . *also* provides an objective justification for the detention.") (emphasis added).

5

The Supreme Court's explicit decision not to provide a limited definition of "immediate vicinity" demonstrates that there are examples, such as this instance, when an individual, such as the defendant, may still have access to dangerous objects within the premises even if the defendant is not within the traditional construct of the "immediate vicinity." United States v. Bailey, 568 U.S. at 201. On December 14, 2018, law enforcement had concerns that the defendant had an "ease of reentry [to the residence]" to detonate a bomb "from [his] location," that is, the parking lot at Dave's Last Chance Saloon from where law enforcement arrested him. Thus the potential of the defendant to detonate a bomb from afar shows that the distance from his residence is of no consequence; law enforcement was aware that whether someone was either in a premises or, as in this case, nearly five miles away, a person can manufacture a bomb to detonate remotely.

Law enforcement's actions in detaining the defendant on December 14, 2018, were "justified by the interests in executing a safe and efficient search." United States v. Bailey, 568 U.S. at 201. Law enforcement did not exercise "far-reaching authority" but were and are permitted to do so to "accommodate the necessities of the search" and provide safety for all. Id. at 195. Law enforcement acted reasonably to ensure that the defendant could not "interfere[ ] with [the] execution of the search warrant," "hide or destroy evidence," "distract the officers," or "simply get in the way." Id. at 197.

Law enforcement's brief detention of the defendant incident to the execution of the signed search warrant at his residence was reasonable under the Fourth Amendment because any brief intrusion on the defendant's personal liberty is outweighed by the special law

enforcement interests at stake. Id. at 202. The public safety interest of both law enforcement and the public in light of the defendant's active and substantial involvement in the manufacturing and possession of bombs, possession and distribution of narcotics (including fentanyl), and possession of firearms in furtherance of drug trafficking demonstrates that law enforcement acted reasonably and appropriate on December 14, 2018.

As previously addressed in the government's previous filing, the defendant erroneously relies on United States v. Gildersleeve, 2013 U.S. Dist. LEXIS 66232 (W.D.N.Y., April 19, 2013). At the time of the search warrant in that matter, law enforcement did not have any information that Gildersleeve possessed or had access to a bomb that he could remotely detonate from elsewhere and thus the facts in that case are not applicable to the case at-hand before this Court. Id. at *20. In contrast to Gildersleeve, in this case, the government relies upon the interests articulated in Summers to demonstrate that the detention of the instant defendant incident to the execution of the search warrant was necessary for the public safety of the officers and others.

The defendant simply wishes for this Court to disregard the Court's ability to consider, among other facts, "the ease of reentry [to the residence] from the [defendant]'s location, and *other relevant factors*" that existed on December 14, 2018, as law enforcement planned to execute a search warrant at the residence of known bomb-maker, owner of firearms, and possessor of fentanyl. United States v. Bailey, 568 U.S. at 201 (emphasis added).

The defendant's motion to suppress evidence should be denied.

> **2.      Alternatively, on December 14, 2018, Law Enforcement Had Reasonable Suspicion to Seize the Defendant and Observe, in Plain View, the Defendant's Loaded Firearm.**

Under Terry v. Ohio, 392 U.S. 1 (1968), a brief investigatory stop by police is permissible if "the officer's action is supported by a reasonable and articulable suspicion, under all the circumstances, that criminal activity 'may be afoot.'" Id. at 19.  To satisfy a Terry stop, officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [on a citizen's liberty interest]." United States v. Elmore, 482 F.3d 172, 178–79 (2d Cir. 2007).

As previously addressed, law enforcement undoubtedly had reasonable suspicion, based on specific and articulable facts, to detain the defendant.  On December 14, 2018, at approximately 3:02 p.m., this Court signed a search warrant to search the defendant's residence for, among other items, narcotics, firearms, drug packaging materials, and bomb-making materials.  The search warrant application included information law enforcement learn about the defendant; in particular, that the defendant possessed drugs, firearms, and bombs and manufactured bombs.  In addition, the application stated that law enforcement had recently conducted a controlled purchase of suspected heroin from the defendant's residence.

During the hours following this Court's signing of the search warrant, law enforcement observed the defendant leave his residence and enter the vehicle from which law enforcement subsequently detained the defendant.  At that time, law enforcement also knew, from a

corroborated source, that "any time [the defendant] left" his residence, "he typically carried a .45 [caliber handgun]." Doc. No. 44 at 31 (lines 24–25).

Based on the nature of the investigation, which included the manufacturing and possession of bombs, possession and distribution of narcotics, including fentanyl, and possession of firearms in furtherance of drug trafficking, law enforcement had ample reasonable suspicion to detain the defendant. As such, officers reasonably (and correctly) concluded that criminal activity was afoot. Further, at that time, law enforcement observed, in plain view while standing outside of the defendant's vehicle, a firearm under the defendant's seat in the vehicle he drove.

In the alternative, an officer making a traffic stop must have at least "reasonable suspicion that the person stopped . . . is otherwise engaged in, or about to be engaged in, criminal activity." United States v. Gomez, 877 F.3d 76, 86 (2d Cir. 2018) (internal quotation marks and citation omitted). "[T]here is a well-established exception for vehicle searches . . . . If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." United States v. Jones, 893 F.3d 66, 70 (2d Cir. 2018) (internal quotation marks and citation omitted).

On December 14, 2018, law enforcement possessed information, in the form of reasonable suspicion, about the criminal activity of the defendant, who was driving a vehicle away from his residence, which was the subject of a pending search warrant. In particular, as FBI Special Agent Weis testified, law enforcement "learned that [the defendant] typically

9

carries a pistol on his person whenever he leaves his house." See Doc. No. 44 at 19 (lines 4–5). Additionally, the FBI learned that the defendant possessed and stored fentanyl for distribution at his residence; law enforcement had recently conducted a controlled buy of fentanyl from the defendant's residence. Id. at 20 – 21. In fact, law enforcement watched the defendant's associate directly enter and exit the defendant's residence after the associate advised the controlled purchaser that the associate kept his supply of drugs at a location which turned out to be the defendant's residence. Id. at 23 (line 8) – 24 (line 15). Finally, law enforcement learned that the defendant possessed a firearm (specifically, a .45 caliber firearm) and thus were aware that the defendant possessed a firearm in furtherance of his drug trafficking activities. Id. at 102 (line 10) – 103 (line 4). Therefore, on December 14, 2018, law enforcement possessed information regarding the defendant's engagement in criminal activity and permissibly stopped the defendant while he drove a vehicle.

## CONCLUSION

For all of the foregoing reasons, the defendant's motion should be denied.

DATED: Buffalo, New York, December 1, 2020.

                                    JAMES P. KENNEDY, JR.
                                    United States Attorney

BY:    s/BRENDAN T. CULLINANE
         Assistant United States Attorney
         United States Attorney's Office
         Western District of New York
         138 Delaware Avenue
         Buffalo, New York  14202
         716/843-5875
         Brendan.Cullinane@usdoj.gov