Project HOME
Helping Offenders as
Mediators for reEntry

Prepared by: Action Paralegal Pro Se
---Law and Advocacy---
Jeremy Mount et al

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

In re: Jeffrey Richards
on
Compassionate Release

Case No. 19-CR-106-JLS

TRAVERSE IN RESPONSE TO THE GOVERNMENT'S RESPONSE
REQUESTING THE COURT DISMISS THE GOVERNMENT'S RESPONSE
FOR FAILURE TO CORRECTLY STATE THE FACTS OR PRECEDENT OF
THIS COURTS HOLDING ON ISSUES OF THE LAW

RELIEF REQUESTED: That the Court dismiss the governments reply for misconstruing facts and failing to properly address court precedent, while misconstruing and mis-interpreting both facts of this case and facts of caselaw.

RELEVANT FACTS OF THIS TRAVERSE

1. The government confirms and agrees that "[t]o date, the government has been unable to locate any record of the warden denying the defendant's request" (for compassionate release)

2. The government lies and states that Mr. Richards has no "grounds (individually or collectively) [to] [provide] support for his release. See Doc. 166 (pg. 8)(government's response) This completely contradicts the Courts holding in United States v. Parish, No. 13 Cr. 829 (AT) 2024 U.S. Dist. LEXIS 151228 (August 22, 2024) In which the Second Circuit Honorable Judge Analisa Torres pointed out at LEXIS 15 a MULTITUDE of compassionate releases granted solely based on COVID - 19 HARDSHIP. We have included this at #4. The precedent in this court show clearly and unambiguously that the Second Circuit holds the effect of COVID-19 on incarceration as ["experiencing] the full gamut of pandemic-related horrors," See LEXIS 14 ALSO EXHIBIT second page.

3. The government further lies and states that Mr. Richards was not incarcerated during the COVID-19 pandemic. See Document 166 Filed 02/21/25 government stating: "The defendant was sentenced on March 13, 2023, less than one month before then-President Joseph Biden ended the COVID-19 national emergency"... This is also misconstruing when Mr. Richards was actually incarcerated and an attempt to deceive the court by misrepresenting facts.

We pulled Mr. Richards SENTENCE MONITORING COMPUTATION DATA AS OF 04-01-2025 and here is what it stated for when Mr. Richards was ACTUALLY incarcerated:

```
-------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 06-29-2023 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 03-16-2023 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 010 020

DATE COMPUTATION BEGAN..........: 09-22-2022
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:  204 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:   17 YEARS
AGGREGATED TERM OF SUPERVISION..:    5 YEARS
EARLIEST DATE OF OFFENSE........: 12-14-2018

JAIL CREDIT.....................:  FROM DATE      THRU DATE
                                   12-14-2018     09-21-2022
```

As the Court can clearly see, Mr. Richards was incarcerated and received credit for prison time from 12-14-2018 which would put him squarely in the pandemic of which the Second Circuit in U.S. v. Parish calls "the full gamut of pandemic-related horrors". (LEXIS 14)

> As to the effect of COVID-19 on incarceration, Parish has been incarcerated throughout the entirety of the pandemic and has "experienced the full gamut of pandemic-related horrors," including "extended lockdowns, constant fear of contracting a deadly virus, limited communication with family, and reduced access to programming." Def. Mem. at 9.

4. Petitioner contest that contrary to the AUSA analysis of Parish only given a lenient sentence by the Court because his "sentence would run concurrent," (Doc 166 Pg. 10 second paragraph) in actuality, the Second Circuit clearly speaks to COVID-19 HARDSHIP:

> The Court agrees with Parish that "the pandemic has made incarceration {2024 U.S. Dist. LEXIS 15} harsher and more punitive than would otherwise have been the case." *United States v. Tellier*, No. 92 Cr. 869, 2022 U.S. Dist. LEXIS 84489, 2022 WL 1468381, at *4 (S.D.N.Y. May 10, 2022) (citation omitted); see *United States v. Rengifo*, No. 09 Cr. 109, 569 F. Supp. 3d 180, 2021 WL 5027334, at *14 (S.D.N.Y. Oct. 29, 2021) (finding that the "unanticipated severity" of lockdown conditions "constitutes another circumstance that, in combination with other factors . . . , collectively amounts to an extraordinary and compelling reason for early release"); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) (holding that "the pandemic, aside from posing a threat to [defendant's] health, has made [his] incarceration harsher and more punitive than would otherwise have been the case," supporting a sentence reduction); *United States v. McRae*, No. 17 Cr. 643, 2021 U.S. Dist. LEXIS 8777, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. Although such conditions are not intended as punishment, incarceration in such circumstances is, unavoidably, experienced as more punishing."); *United States v. Djemal Nehmad*, No. 16 Cr. 829, 2020 U.S. Dist. LEXIS 213883, 2020 WL 6719380, at *3 (S.D.N.Y. Nov. 16, 2020) (granting compassionate release in part because defendant "ha[d] not seen any member of his family in four years"); *United States v. Cardenas*, No. 17 Cr. 339, 2021 U.S. Dist. LEXIS 158897, 2021 WL 3722761, at *2 (S.D.N.Y. Aug. 23, 2021) (granting sentence reduction in 2021 where, due to pandemic-related restrictions, defendant "ha[d] not seen his wife and young daughter since 2019").

pg 2

5. The AUSA erroneously contests that Mr. Richards sentence was not increased for acquitted conduct. However, Petitioner contest that in the 'sentencing transcripts' for his sentencing, the Court concluded to Mr. Anderson that it was specifically giving additional time due to the unadjudicated conduct for which he was not charged. In the sentencing context, some commentators have objected that use of acquitted, or unadjudicated conduct, that enhances a sentence punishment...as did Mr. Richards sentence... violates due process, and a number of courts have rejected the use of acquitted conduct or un-adjudicated conduct to enhance sentences on state law grounds. See e.g.:

> See, e.g., State v. Cote, 530 A.2d 775, 783–85 (N.H. 1987), reaffirmed in State v. Cobb, 732 A.2d 425, 442 (N.H. 1999); State v. Patterson, 673 N.E.2d 1001, 1005 (Ohio Ct. App. 1996); People v. Wilkonson, 281 A.D.2d 373, 374 (N.Y. App. Div. 2001).

The AUSA does not contest that the court did increase Mr. Richards sentence because of a device that the Court had not conclusively shown was an actual bomb that would hurt people. Mr. Richardson was not adjudicated on making a bomb. The court never charge him for making a bomb so he was acquitted. For the Court to then increase his sentence on the **very conduct for which he was acquitted** of wrong doing on such charges was collateral estoppel. And even if it was not, the Court should not have enhanced his sentence where the government had not proven the essential elements of the contention that he was making a 'bomb' and what that 'bomb was meant to occomplish', as speculation and conjecture has no place in a sentencing by the facts. Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979) SEE ATTACHMENT, 'FEDERAL PRISON GUIDEBOOK'.

6. Petitioner contest that the AUSA has not addressed that a Compassionate Release is not an 'all or nothing' conclusion. Without question, Courts in all the circuits have granted reductions without giving defendants a 'time served' ruling. The Court in United States v. Cunningham, Crim No. ELH-18-017 (4th Cir. Sept. 4, 2024) well reasoned that "the First Step Act "does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court discretion in its evaluation of the appriate sentence once it finds 'extraordinary and compelling reasons.'" United States v. Braxton, JKB-09-478, 2020 U.S. Dist. LEXIS 147379  2020 WL 4748536, at *5 (D. MD. Aug.17, 2020)"

ARGUMENT AND SUPPORTING CASELAW

## COUNTER ARGUMENT I

PETITIONER DOES HAVE A
EXTRAORDINARY AND COMPELLING CASE

1.  Mr. Richardson should qualify for an extraordinary and compelling reason according to the clearly mandated legislation under §1B1.13 reduction terms under 18 U.S.C. § 3582(c)(1)(A) - OTHER REASONS which allow defendants to present any other circumstance or combination of circumstances that, when considered by themselves or together with any other reasons ...are similar in gravity to extraordinary and compelling circumstances outlined in Compassionate Release.

2.  The AUSA does not want the Court to use other cases because the AUSA says that each case is different. But we disagree that the multitude of agreeable evidence in caselaw coming out of the Second Circuit speaking to inmate hardship during COVID-19 has nothing to do with a 'case-by-case' analysis, but instead shows common law of the court. Further, the reason that we used Amerson had nothing to do with the case's 'HEALTH' issues as the AUSA alluded to, (see pg. 10 Doc. 166 filed 02/21/25 GOVERNMENT'S RESPONSE) but rather to the Second Circuit's standing precedent for what qualifies a defendant to be granted relief for a Covid-19 Pandemic induced hardship reduction, which Amerson Court District Judge SEYBERT explained that "a day spent in prison under extreme lockdown and in well-found fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison," and "particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic..." See: Sentencing Transcript Sept. 22, 2022 "I know it's a long time" by Judge Sinarta Jr. (pg 29)

3.  Defendant Richards qualifies for District Judge SEYBERT's 'specific ground' for relief because as SEYBERT states, Mr. Richards was:

    (i) serving a long sentence. ---- See Sentencing Transcript pg 29 Judge Sinarta Jr.

    (ii) detained for the entirety of the pandemic.

    Other Courts a priori also give clarity to this discussion, for example United States v. Pinal-Maldonado, U.S. Dist, LEXIS 188459 (9th Cir. Oct 19, 2023) notes "the

Court cannot ignore the change in prison conditions that has resulted from Covid-19. See United States v. Armstrong, No. 19-cr-5108-BAS-1, 2020 U.S. Dist LEXIS 135313 at *11 (S.D. Cal. July 30, 2020)

> As this Court has previously explained:
>> **The BOP has acknowledged that the operational modifications have** placed a heavy burden on inmates and their families. While much of the world has reverted to pre-pandemic normalcy, life in BOP custody has not-if it ever will. "A day in prison under the current conditions is a qualitatively different type of punishment than one day in prison used to be." *See United States v. Kibble*, 992 F.3d 326, 335 (4th Cir. 2021) (Gregory, C.J., concurring). In an effort to keep COVID-19 at bay, inmates are often isolated or placed in solitary confinement, prison programs have been suspended or ended entirely, facilities have restricted visitation, and access to nonessential medical care is often limited. *See id.* (collecting cases).*Ortiz*, 2023 U.S. Dist. LEXIS 31532, at *16.

4. Neither does the Second Circuit's precedent change in other cases on this issue of experiencing COVID's "onerous lockdowns and restrictions imposed by correctional facilities...made sentencing 'harsher and more punitive than would otherwise have been the case'" See U.S. v. Hatcher, No. 18-cr-454-KPF-10, 2021 U.S. Dist. LEXIS 74760, 2021 WL 1535310 at *3 (S.D.N.Y. Apr. 19, 2021); U.S. v. McRae, No. 17-CR-643-PAE, 2021 U.S. Dist. LEXIS 8777, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021)(same); U.S. v. Ciprian, U.S. Dist. LEXIS 18698 (2nd Cir. Feb. 1, 2021)(at LEXIS 34)(same and with a multitutde of cases confirming COVID-19 Pandemic induced hardship is atypical and significant to constitute extraordinary and compelling circumstances ... particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic. (quoting Oquendo, 2023 U.S. Dist. LEXIS 8073, 2023 WL 199609, at *5.)

5. For these reasons the Court should disregard the AUSA's contentions that COVID-19 would not be a viable ground for Compassionate Release consideration alone or in combination with other factors. Certainly it would not take a gigantic leap over a chasm of logic to conclude that, yes, the Second Circuit precedent is in favore of acknowledging COVID-19 as a relevant factor for an inmate who experienced the full hardship of the deadly COVID-19 Pandemic. The Court should grant Petitioner at least some reduction for his hardship he endured during COVID-19 because that would be in good following with the precedent of the Second Circuit.

COUNTER ARGUMENT II

MR. RICHARDS SENTENCE WOULD BE LESS IF
CALCULATED TODAY BECAUSE HIS COUNSEL GAVE
INEFFECTIVE ASSISTANCE IN FAILING TO ADDRESS
THE COVID-19 PANDEMIC REDUCTION FOR HARDSHIP

1. In Petitioner's original argument, the Court could have liberally construed his arguments of Compassionate Release to include ineffective assistance at a critical point in his sentencing and a missed oppertunity due to trial counsels failure to provide Sixth Amendment counsel on a COVID-19 Pandemic hardship created by the horrific conditions created by the Pandemic in prisons. The Court should find particularly instructive the Supreme Court's holding in <u>United States v. Wade</u>, Supra, 388 U.S. at 227, 87 S. Ct. at 1932 holding that the doctrine of consultation at "critical" stages has been applied to proceedings where important rights could be lost by an unknown defendant absence the assistance of knowledgeable counsel. To state in a slightly different way, it has been applied "at every stage of criminal proceeding where the substantial rights of a criminal accused may be affected." <u>Mempa v. Rhay</u>, 389 U.S. 128, 134, 88 S. Ct. 254, 257, 19 L.Ed.2d 336 (1976).

2. We adress this issue because the AUSA has brought up at pg. 11 of Doc 166 Gov. Response filed 02/21/25 that Mr. Richards sentence would "be the same today" if he were sentenced. In light of the fact that he was not given any credit or reduction of a sentence for the COVID-19 harshness of prison during that time, in step with what the Second Circuit has clearly stated about the environment of prison being ...in the Second Circuit's own words, "more punishing" <u>McRae</u>, No. 17-cr-643-PAE LEXIS 8777 WL 142277 at, *5; "harsher and more punitive than would otherwise have been the case", <u>Hatcher</u>, No. 18-cr-454-KPF-10 WL 1535310, at *3; "extreme lockdown" and "fear of contracting a deadly virus" <u>McRae</u>, WL 142277, at *5; see also <u>Otero</u>, (2nd Cir. Mar. 29, 2023)LEXIS 54293 at LEXIS 34 (same) we feel that had Mr. Richardson's lawyer been effective, Mr. Richardson would have been granted an appropriate reduction, and because the Court did not award him such relief then, the Court should take the oppertunity under equal protection of the law to grant a partial reduction as in <u>U.S. v. Zullo</u>, 976 F.3d 228, 327 (2d Cir. 2020)("it bears remembering that compassionate release is a misnomer...a...court could...reduce...sentence")

AUSA STATES PETITIONER'S SENTENCE IS NOT UNREASONABLY LONG BUT AFTER EVALUATING GROBER COURTS CLEARLY DISAGREE

3.  The conclusion by the AUSA that Petitioner's sentence is not unusually long is at least not supported by the Grober, court which answers the question of 'substantial sentence' by concluding that "[a] sentence of five years is a substantial sentence. Five years is not a slap on the wrist: it is 260 weeks, 1825 days. Anyone who thinks five years of incarceration is a slap on the wrist has not visited a federal prison lately." 595 F. Supp. 2d 412 LEXIS 103392 at LEXIS 84 (3rd Cir. Dec. 22, 2008) Under this analogy we wonder what the Grober court would say about 17 years which is over 1000 weeks and 6,205 days of incarceration, costing tax payers $769,420.00.

We do not think it would be a gigantic leap over a chasm of logic to conclude that 17 years is a very long time and an extremely harsh sentence for a first time offender who is a father of a very young child he will never see growing up. For this reason we ask the Court to disregard the AUSA's argument on Petitioner's time not being 'harsh', during Covid-19 Pandemic incarceration.

RELIEF REQUESTED: Either alone or combined with other factors, the Court should grant Petitioner the same relief it has granted other Covid-19 survivors of prison which the Amerson Court has stated using United States v. McRae, No. 17-CR-0643, 2021 U.S. Dist. LEXIS 8777, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) that a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. And hence, "detention during the pandemic is 'essentially the equivalent of either time and a half or two times what would ordinarily be served'". Id. (citing United States v. Elias, 579 F. Supp. 3d 374, 378 (E.D.N.Y. 2022). See same in U.S. v. Martinez, (10th Cir. July 18, 2023) LEXIS 123128. (quoting U.S. v. Valencia-Lopez, No. 05-CR-841 (NGG), 2022 U.S. Dist. LEXIS 11461, 2022 WL 198604, at *3 (E.D.N.Y. Jan. 21, 2022)).

<u>COUNTER ARGUMENT III</u>

UNDER JOHNSON HOLDING A SENTENCE
REDUCTION FOR ACQUITTED CONDUCT
WOULD BE APPROPRIATE AND THEREFORE
WARRANTS EXTRAORDINARY AND COMPELLING
REASONS FOR A SENTENCE ADJUSTMENT

### Issue

The Court applied an upward varience to Mr. Richards sentence for what the Court felt was a device meant to injure people, however, Mr. Richards was not convicted for making a weapon of mass distruction or a weapon or bomb. The Court acknowledged that "experts dispute" that the device could be used to hurt anyone. See Pg. 28 Sentencing Transcript Sept. 22, 2022. Mr. Richards was not given proper due process because the evidence that Mr. Richards was making a 'bomb' that would hurt people was never proven by clear and convincing evidence and that charge was clearly different conduct then his charge for drugs, thus, it falls under acquitted conduct, not relevent conduct to the drug charge, and under <u>Johnson</u>, No. 96-cr-932 the Second Circuit has now stated that acquitted conduct is firmly disfavored. The AUSA opposes Mr. Richards request for a sentence reduction because the court unfairly departed upward on his sentence for acquitted conduct of an 'alleged home-made bomb', however the Johnson precedent is in Mr. Richards favore for a reduction of his sentence.

### Summary of the Facts

The narrow issue here is whether the Second Circuit and the trial court correctly applied an upward departure for a 'home-made bomb' which experts contended was not even a device that could have been detonated. The Corpus Delecti of a charge to convice on weapons of mass distruction or a weapon to hurt people must include where the bomb was built, what was used to make the bomb, who it was meant to hurt, and what clear and convincing proof the Court has that there was a mens rea to both make a weapon that worked and who that weapon was meant to injure. None of these critical facts were covered at Mr. Rihards sentencing, and the Court agreed and admitted that 'experts' disagree on the evidence to convict a crime.

Considering that the Court has determined in U.S. v. Johnson, Case No. 96-cr-932 LEXIS 189175 (2nd Cir. Oct. 17, 2024) by Senior District Judge BLOCK that the practice of sentencing defendants based on acquitted conduct is now firmly disfavored, Petitioner Richardson would and should fall under the extraordinary and compelling circumstances to consider a reduction in his sentence for the upward varience of conduct he was not found guilty of that had no relation to his drug charge conduct but was seperate conduct of allegedly making a bomb that could hurt people yet contested by experts as not convictable conduct because of lack of sufficiency of the evidence to convict and thus acquitted conduct.

### Precedent and Authority

The Second Circuit Senior District Judge BLOCK has stated in Johnson, 96-cr-932 that the practice of sentencing defendants based on acquitted conduct is firmly disfavored see McClinton v. United States, 143 S. Ct. 2400, 2401, 216 L.Ed.2d 1258 (2023)(Sotomayor, J., "respecting the denial of certiorari"). 6 "As many jurists have noted, the use of acquitted conduct to increase a defendant's Sentencing Guidelines range raises important questions that go to the fairness and perceived fairness of the criminal justice system." Id. at 2401 & n.2 (collecting cases).7 In recently promulgated sentencing guideline amendments, the U.S. Sentencing Commission explained that acquitted conduct ought not be considered in calculating a defendant's guideline range. See U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines (Apr. 30, 2024 ) (amended § 1B1.3: "Acquitted Conduct. - Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction").8

### RELIEF REQUESTED

Petitioner should be granted extraordinary and compelling reasons for the upward departure of his sentence on acquitted/non-adjudicated conduct not assossiated with the other charges.

## CONCLUSION

The Court should disregard the AUSA contentions in it's reply brief because the facts clearly weigh in favor of Mr. Richards extraordinary and compelling reasons for either a sentence reduction or a granting of a special condition that he be able to spend the remainder of his time on home confinement or a compassionate release of his sentence to time served. Mr. Richards should be granted the same due process as other people who were granted similar compassionate releases on COVID-19 Pandemic induced hardship and he should be considered for a reduction in his sentence per the holding in both the Senior District Judge BLOCK's holding and Supreme Court precedent in McClinton.

FURTHER YOUR AFFIANT SAYETH NOT

Respectfully submitted                    Date

*/s/ Jeffrey Richards*                    4/28/2025

Jeffrey Richards ID: 28478-055
FCI-Milan P.O. Box 1000
Milan, MI - 48160

## NOTICE OF SERVICE

I, Jeffrey Richards, duly sworn and writing pro se, state that I sent this response to the Court Clerk at:

Robert H. Jackson Courthouse
2 Niagara Square, Room 200
Buffalo, NY - 14202

Interested parties:
AUSA
U.S. Attorney's Office
Western District of New York
138 Delaware Ave.
Buffalo, New York - 14202

and Joel Louis Violanti
Acting U.S. Attorney

Respectfully submitted,

-Jeffrey Richards
ID: 28478-055
FCI-Milan - P.O. Box 1000
Milan, MI - 48160

1  device, so there is no confusion about the import of the plea.
2          But I am relying on the reports that I cited earlier,
3  and paragraphs 18, 21, and 24 of the presentence report.
4          Regarding the facts of what actually occurred, and
5  what was found, and what actually this device was, how it was
6  made, and why it was made -- and again, 18, 21, and 24 are the
7  paragraphs.
8          And there is also both of the competing expert
9  reports, if you will.  Maybe this was a device that wasn't
10 capable of exploding and hurting as many people as perhaps was
11 intended.
12         But the way I look at the facts here, Mr. Richards was
13 making this device with some malicious intent to have it hurt
14 people.
15         Whether he got it right or whether he got it wrong, I
16 don't know.  The experts dispute that.  But he certainly, in my
17 judgment, had the intent to build something that was going to
18 hurt people.
19         So that's one of the reasons, plus the proximity of
20 the weapons in the apartment, plus -- in paragraph 24, he's at
21 the post-Miranda stage, admitting to selling cocaine to support
22 his drug addiction.  So I think all of those factors together
23 support the upward variance.
24         I have taken into account your personal history and
25 characteristics.  In particular, I've considered your struggles

```
  MILFE   540*23  *          SENTENCE MONITORING            *    04-01-2025
PAGE 002          *            COMPUTATION DATA             *    14:03:57
                              AS OF 04-01-2025


REGNO..: 28478-055 NAME: RICHARDS, JEFFREY



------------------------CURRENT OBLIGATION NO: 020 -------------------------
 OFFENSE CODE....:  130     18:924(C) FIREARMS LAWS        FSA INELIGIBLE
 OFF/CHG: 18:924(C)(1)(A)(I) POSSESSION OF A FIREARM IN FURTHERANCE OF
          A DRUG TRAFFICKING CRIME CT.1,2

  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:    60 MONTHS
  TERM OF SUPERVISION............:     3 YEARS
  RELATIONSHIP OF THIS OBLIGATION
   TO OTHERS FOR THE OFFENDER....: CS TO 010,010,010
  DATE OF OFFENSE................: 12-14-2018

------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 06-29-2023 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 03-16-2023 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 010 020

 DATE COMPUTATION BEGAN..........: 09-22-2022
 AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
 TOTAL TERM IN EFFECT............:   204 MONTHS
 TOTAL TERM IN EFFECT CONVERTED..:    17 YEARS
 AGGREGATED TERM OF SUPERVISION..:     5 YEARS
 EARLIEST DATE OF OFFENSE........: 12-14-2018

 JAIL CREDIT.....................:      FROM DATE       THRU DATE
                                         12-14-2018      09-21-2022
```

EXHIBIT A2

G0002       MORE PAGES TO FOLLOW . . .

1  with your mental health from a young age.

2       I'm imposing a condition related to mental health
3  treatment that I hope will assist you in keeping your mental
4  health stable.

5       I've imposed a substance abuse treatment condition as
6  well, based on your history of substance abuse, and which as you
7  acknowledged, led to these charges.

8       I hope that upon release you are able to stay away
9  from the heavy drug lifestyle that got you into this trouble.

10      I've taken into account -- and I really have taken
11 into account that you have no prior criminal history.

12      I've considered your acceptance of responsibility and
13 your stated goal to be a father to your young son.  I encourage
14 you to move past these offenses, so you can be there for him now
15 and in the future, upon your return.  I know it's a long time.

16      I'm imposing a term of supervised release with special
17 conditions.  This is intended to help you return to society
18 after your incarceration.

19      I also will allow the U.S. Probation Office -- and
20 this condition will -- the supervised release term will allow
21 the probation office to monitor your activities to ensure that
22 you don't engage in further illegal activity.

23      In sum, based on the advisory guidelines, the
24 positions of the parties, my review of the statutory sentencing
25 factors, and my consideration of all other facts and

*[handwritten in left margin: Attachment B]*

Cir. 2009) or even clear and convincing evidence, *see United States v. Staten*, 466 F.3d 708 (9th Cir. 2006) (higher standard required where sentencing factor has an extremely disproportionate effect on ultimate sentence), that is not necessarily correct despite the fact that the guidelines are no longer mandatory.

It is important to remember that the whole business about preponderance of the evidence sufficing for purposes of applying the guidelines is entirely a creation of the U.S. Sentencing Commission, and not of common law. Mere commentary to a policy statement at U.S.S.G. §6A1.3 sets forth that "[t]he Commission believes that use of a *preponderance of the evidence standard is appropriate to meet due process* requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case." (Emphasis added.)

As Justice Thomas noted in his partial concurrence (to the constitutional opinion) and dissent (to the remedial opinion) in *Booker*, there is also a due process component to the Court's constitutional opinion:

> The Court's holding today corrects [the Commission's] mistaken belief [that a preponderance of the evidence standard is appropriate to meet due process requirements]. *The Fifth Amendment requires proof beyond a reasonable doubt*, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant.

(*Booker*, 543 U.S. at 319 n.6 (Thomas, J., concurrence in part, dissent in part) (emphasis added).)

In fact, the commentary at U.S.S.G. §6A1.3 was not even part of the original 1987 guidelines but only was promulgated much later in 1991. (*See* U.S.S.G. App. C., Amend. 387.) The commission itself apparently was indecisive as to whether to include such a standard, let alone whether a preponderance of the evidence comported with the Fifth Amendment. In perhaps the seminal law review article on the foundation of the guidelines, the commission's first chairman, former Fourth Circuit Court of Appeals Chief Judge William W. Wilkins, Jr., and former general counsel (and later vice chair of the commission), John R. Steer, noted in *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines* (41 S.C.L. Rev. 495 (1990)), that "[n]either the Sentencing Reform Act nor the Guidelines Manual explicitly address these issues [of evidentiary standards]." (*Id.* at 518.) Relying on now-overruled authority, they wrote that:

> Pre-guidelines pronouncements by the United States Supreme Court and other courts indicate that a preponderance of the evidence standard comports with fifth amendment due process requirements when sentencing factors, including those within the ambit of Relevant Conduct, are contested.

(*Id.* at 518-19 (footnotes omitted).) Again, as Justice Thomas recognized, reasoning no longer is constitutional.



**UNITED STATES OF AMERICA -against- WALTER JOHNSON, Defendant.**
**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**
2024 U.S. Dist. LEXIS 189175
Case No. 96-CR-932 (FB)
October 16, 2024, Decided
October 17, 2024, Filed

**Editorial Information: Prior History**

United States v. **Johnson**, 1998 U.S. Dist. LEXIS 7537 (E.D.N.Y., May 20, 1998)

**Counsel**   {2024 U.S. Dist. LEXIS 1}For the Government: BREON PEACE, AMANDA SHAMI, U.S. Attorney's Office, Eastern District of New York, Brooklyn, New York. For the Defendant: MIA EISNER-GRYNBERG, Federal Defenders of New York, Brooklyn, New York.

**Judges:** FREDERIC BLOCK, Senior United States District Judge.

Opinion

**Opinion by:**   FREDERIC BLOCK

Opinion

**MEMORANDUM AND ORDER**

**BLOCK, Senior District Judge:**

Pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), Walter Johnson ("Johnson") moves for a sentence reduction and immediate release. For the following reasons, his petition is GRANTED and his sentence reduced to time served.

The practice of sentencing defendants based on acquitted conduct is now firmly disfavored. *See McClinton v. United States*, 143 S. Ct. 2400, 2401, 216 L. Ed. 2d 1258 (2023) (Sotomayor, J., "respecting the denial of certiorari").6 "As many jurists have noted, the use of acquitted conduct to increase a defendant's Sentencing Guidelines range raises important questions that go to the fairness and perceived fairness of the criminal justice system." *Id.* at 2401 & n.2 (collecting cases).7 In recently promulgated sentencing guideline amendments, the U.S. Sentencing Commission explained that acquitted conduct ought not be considered in calculating a defendant's guideline range. *See* U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines (Apr. 30, 2024) (amended § 1B1.3: "Acquitted Conduct. - Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense{2024 U.S. Dist. LEXIS 12} of conviction").8

DISHOT                                              1

122

ACT® WorkKeys® Curricu

Jeffrey Richards
ID: 28478-055
FCI-Milan-P.O. Box 1000
Milan, MI - 48160



19-CR-106



USDC - WDNY
MAY - 6 2025
BUFFALO

Attn: Clerk of the Court
Robert H. Jackson Courthouse
2 Niagara Square, Room 200
Buffalo, NY
14202